IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DENISE E. BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:05-cv-778-WDS |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by Senior United States District Judge William D. Stiehl pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the Petition for Revocation of the Commissioner's Decision Denying Benefits (entitled "Plaintiff's Brief") filed by the Plaintiff, Denise E. Baker, on August 29, 2002 (Tr. 105-107, Doc. 1). For the reasons set forth below, it is **RECOMMENDED** that the Plaintiff's petition be **DENIED**, that **JUDGMENT** be entered in favor of the Defendant, and that the Court adopt the following findings of fact and conclusions of law:

### FINDINGS OF FACT

Plaintiff Denise Baker applied for Disability Insurance Benefits on August 29, 2002, alleging an onset date of August 21, 1999 (Tr. 105-107). Her claim was denied initially and upon review. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was granted and held on December 17, 2004 (Tr. 23-76). After the hearing, ALJ Lyle Olson issued an unfavorable decision (Tr. 21-22), and Plaintiff appealed the decision to the Appeals Council, which subsequently denied Plaintiff's request for review on September 26, 2005 (Tr. 5-8). Plaintiff then filed her complaint before this Court on May 16, 2006.

Plaintiff was fifty-one years old at the time of the ALJ's decision (Tr. 29). She is a high school graduate and she previously worked as a retail clerk and babysitter (Tr. 118, 123). On April 6, 1997, Plaintiff had an on-the-job injury to her back while working as a cashier at K-Mart (Tr. 29). Ten days later, on April 16, 1998, Plaintiff saw her primary care doctor, Christopher Rice, who diagnosed Plaintiff as having a back strain (Tr. 180-193). Dr. Rice then referred Plaintiff to Mark J. Trekla, M.D., a neurologist (Tr. 198). Dr. Trekla ordered electromyography and nerve conduction studies which indicated mild left peroneal neuropathy at the level of the left lateral knee (Tr. 188). The rest of the results were within normal limits (Tr. 188). Dr. Trekla advised Plaintiff to avoid all lifting, bending, turning, twisting, or stooping (Tr. 187). When Dr. Trekla saw Plaintiff six weeks later, she was undergoing physical therapy and was using a TENS unit[1] (Tr. 178). Shortly thereafter, Plaintiff then saw Dr. Alan L. Froehling, who noted that Plaintiff's pain was a one (1) on a scale of zero to ten and that she could safely lift up to forty (40) pounds (Tr. 179). Dr. Rice then cleared Plaintiff to return to work (Tr. 200). By early 1998, Plaintiff went back to work at K-Mart with a limited schedule (Tr. 256).

On June 15, 1998, Plaintiff was evaluated by Dr. David B. Robson of the St. Louis Spine Care Alliance (Tr. 288). Dr. Robson reviewed a Magnetic Resonance Imaging study, dated July 11, 1998, and found that it was completely normal with no degenerative changes, bulging discs, herniated discs, or stenotic areas (Tr. 288). Dr. Robson believed that Plaintiff should not have any restrictions placed on her (Tr. 288). Dr. Robson saw Plaintiff again in April of 2000, and again noted that no restrictions should be placed on her (Tr. 286-87). .

---

[1]TENS is the acronym for Trancuteous Electrical Nerve Stimulation. A "TENS unit" is a pocket size, portable, battery operated device that sends electrical impulses to certain parts of the body to block pain signals.

In June of 1999, Plaintiff reported to Dr. Rice that she was experiencing increased back spasms in her lower back (Tr. 238). The spasms were treated with Soma[2] but Plaintiff reported that the prescription was not relieving the pain (Tr. 238). At this same time, Plaintiff was also treated for IBS,[3] anxiety, depression, and GERD[4] (Tr. 18). Plaintiff quit working at K-Mart in August of 1999, and began babysitting her grandson (Tr. 38).

A functional capacity evaluation taken on July 25, 2000, indicated that Ms. Baker could work at the light physical demand level for an eight-hour day according to the Dictionary of Occupational Titles, U.S Department of Labor, 1991 (Tr. 209). Specifically, the test determined that Plaintiff had the ability to frequently forward bend and crawl, generally lift twenty-three pounds on an occasional basis, and lift fourteen pounds on a frequent basis (Tr. 231).

In September of 2000, Dr. Matthew Gornet examined Plaintiff (Tr. 284-85). Dr. Gornet reviewed radiographs and a 1998 MRI scan that indicated Plaintiff had a mild loss of disc height, and some mild arthropy on the right side (Tr. 285). Dr. Gornet found the claimant was able to bend and forward flex with her hands approximately to her ankle, but extension exacerbated her pain (Tr. 284).

On April 5, 2001, Dr. David Robson again examined Plaintiff (Tr 286-287). Plaintiff could stand on her heels and toes, forward flex to ninety degrees, and display negative straight leg raising (Tr. 287). Dr. Robson observed that a functional capacity work up was consistent with the

---

[2] Soma is a medication used to treat pain and discomfort from muscle injuries such as strains, sprains, and spasms. It is a centrally acting muscle relaxant. It works on the nerves to relieve muscle pain.

[3] IBS is an acronym for irritable bowel syndrome.

[4] GERD is an abbreviation for gastroesophageal reflux disease, which is a chronic condition in which the lower esophageal sphincter allows gastric acids to reflux into the esophagus, causing heartburn, acid indigestion, and possibly injury to the esophageal lining.

ability to perform work, but he also noted that Plaintiff had shown a positive Waddell sign, which sometimes raises a question of appropriate effort (Tr. 286).

Dr, Hal E. Gordon diagnosed the Plaintiff with reactive airway disease on August 1, 2001 (Tr. 326).  A Computed Tomography (CT) scan report and pulmonary function test, dated April 29, 2003, revealed that Plaintiff's pulmonary functioning was within normal limits (Tr. 344).

Dr. Paul Jergens diagnosed Plaintiff with lumbar myofascial pain on May 5, 2001.  He administered trigger-point injections to address her pain complaints, but Plaintiff reported that they were not successful (Tr. 290).

Approximately two years later, Plaintiff submitted to a consultative physical exam on March 6, 2003, conducted by Dr. Raymond Leung (Tr. 350).  Upon examination, Dr. Leung found that Plaintiff was able to bend "fairly well" with full ROM in the lumbar spine, but that she had difficulty with prolonged sitting and standing (Tr. 350-353).  He noted that Plaintiff stated she can walk one block, climb one flight of stairs at a time, and can lift up to twenty-five pounds (Tr. 350).

In June of 2003, Dr. Julio Pardo reviewed the record for the state and concluded that Plaintiff could occasionally lift and/or carry fifty pounds, frequently carry twenty-five pounds, and could stand or walk with normal breaks for about six hours in an eight-hour workday (Tr.167).  Further, he found no significant functional limitations, and found Plaintiff capable of medium work activity (Tr. 173).

At the hearing held on September 1, 2004, Plaintiff testified, as did Denise Baker and Dr. James Bordieri, a vocational expert ("VE").  Plaintiff stated that she babysat for her grandson since he was born, and currently did so occasionally on weekends and sometimes after school (Tr. 30).  Plaintiff lives with her husband, her father, and her father-in-law (Tr. 31).  Her father and father-in-law are fairly independent, but Plaintiff stated that she cooks them dinner, does a little of

4

their laundry, and drives them to appointments (Tr. 31). Plaintiff testified that she cannot make her bed, vacuum, or do yard work (Tr. 58). Plaintiff also indicated that she does use a cane when she is having problems with her left leg, as was recommended by a doctor, but that she was not using it on the date of the hearing (Tr. 34).

Plaintiff stated that she has tried different types of pain medication for her back, including Percocet and Darvocet, but that they "do nothing" (Tr. 47). She describes her bad days as the "pain hurting so bad that she cannot get out of bed with the only relief being a heating pad" (Tr. 45).

Medical expert Dr. Bordieri, a VE, testified that an individual who is able to lift and carry up to fifty pounds on an occasional basis, twenty-five pounds on a frequent basis, stand or walk with normal breaks for a total of about six hours in an eight-hour day, sit with normal breaks for a total of about six hours in an eight-hour day, and avoid concentrated exposure to environmental irritants would be able to perform the Plaintiff's past relevant work as a retail cashier, a retail clerk, sales associate, and as a babysitter (Tr. 70-71).

The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.

## CONCLUSIONS OF LAW

The standard for judicial review of an Administrative Law Judge's (hereinafter "ALJ") finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. 42 U.S.C. §405(g) ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive. . . ."); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003); Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001); See also White v. Barnhart, 415 F.3d 654, 659 (7th Cir. 2005) (stating that "the reviewing court is not allowed to substitute its

judgment for the ALJ's by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility" (quotation marks and citation omitted).  Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." Richardson v.Perales, 402 U.S. 389, 401 (1972) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)); Sims v. Barnhart, 309 F.3d 424, 428 (7th Cir. 2002); Green v.Shalala, 51 F.3d 96, 101 (7th Cir. 1995).  An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. Golembiewski, 322 F. 3d at 915; Cannon v. Apfel, 213 F.3d 970, 974 (7th Cir. 2000).  However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." Lopez ex. rel. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003).

     Supplemental insurance benefits are available only to those individuals who can establish a "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. 20 C.F.R. § 416.920.  The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." 20 C.F.R. § 416.920(b).  If she is, the claimant is not disabled and the evaluation process is over; if she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. 20 C.F.R. § 401, pt. 404, subpt. P, app. 1.  If it does, then the impairment is

acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. 20 C.F.R. § 416.920(e). However, if the claimant shows that her impairment is so severe that she is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f).

Plaintiff's first argument is that ALJ Olson erred by discounting the opinion of Plaintiff's treating doctor by misapplying SSR 96-8P.

> SSR 96-8P states: "The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms. Age and body habitus are not factors in assessing RFC. It is incorrect to find that an individual has limitations beyond those caused by his or her medically determinable impairment(s) and any related symptoms, due to such factors as age and natural body build, and the activities the individual was accustomed to doing in his or her previous work."

Here, the ALJ found that the treating physician, Dr. Rice, advised Plaintiff to seek sedentary employment because her petite body type, lack of muscular tone, and poor conditioning would make her prone to musculoskeletal back strain (Tr. 18). This conclusion is supported in the record by Dr. Rice's deposition testimony regarding reasons why he would place permanent work restrictions on Plaintiff (Tr. 199). Dr. Rice was only able to testify that Plaintiff's work related activity "could" or "might" have been a cause of his diagnoses of lower back strain because he also considered her body frame and her muscular build to be a factor (Tr. 199). However, the ALJ correctly stated in his opinion that Social Security Regulation 96-8p bars consideration of

7

limitations or restrictions beyond those caused by the Plaintiff's medical impairments. Therefore, it was not error for the ALJ to accord little weight to be given to Dr. Rice's testimony. Plaintiff's objections are without merit, the ALJ was within his discretion to accord little weight, especially in consideration of Regulation 96-8p.

Plaintiff's second argument is that the ALJ failed to consider a line of evidence that would support a finding of disabled status. The ALJ found that Ms. Baker is limited to doing light work, lifting twenty pounds occasionally, ten frequently, stand six hours, sit two hours, and avoid concentrated environmental irritants (Tr 21). Plaintiff disputes this assessment stating that the ALJ failed to assess material evidence contrary to this finding. Specifically, Plaintiff alleges that the ALJ improperly ignored Dr. Rice's testimony that Plaintiff could lift twenty pounds only on a single lift basis and that standing caused stress on Plaintiff's back, and that she would likely need to sit or stand intermittently at will. Plaintiff also argues that the ALJ failed to address the functional capacity evaluation (FCE) that Plaintiff underwent in July of 2000, which found Plaintiff had lifting capabilities for light work but was limited to only occasional (less than one third of the workday) standing while sitting could be done frequently (Tr. 222, 231).

Although an ALJ must "articulate, at some minimum level, his analysis of the evidence he is not required to address every piece of evidence or testimony." Dixon, 270 F.3d 1176 (7th Cir. 2001). Further, while an ALJ may not disregard entire lines of evidence that are contrary to his findings, he need not provide a complete written evaluation of every piece of testimony and evidence in the record. Henderson v. Apfel, 179 F.3d 507, 514 (7th Cir. 1999). Although the ALJ does not discuss at length Dr. Rice's testimony or the functional capacity evaluation, the ALJ provided more than the required "glimpse into the reasoning behind his decision to deny benefits." Zurawski v. Halter, 245 F.3d 881, 889 ( 7th Cir. 2001).

The ALJ did not fail to consider the evidence Dr. Rice presented through his testimony.  In fact, the record reflects that the ALJ did evaluate the evidence and chose to accord it little weight (Tr. 18).  Dr. Rice's testimony that the Plaintiff was able to lift twenty pounds only on a single lift basis and that standing caused stress on Plaintiff's back was contradicted by other medical evidence.  As the Seventh Circuit has recently noted, treating physicians opinions are entitled to controlling weight only if they are "not inconsistent with the other substantial evidence."  Holfslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006).

In accessing Plaintiff's ability to lift weight and stand, the ALJ relied on the functional capacity evaluation which stated that Plaintiff can generally lift twenty-three pounds on an occasional basis, notes from an exam performed by Dr. Leung that stated Plaintiff could lift twenty-five pounds, notes from an exam performed by Dr. Pardo that Plaintiff could lift twenty-five pounds and Plaintiff's own testimony that she could lift fifteen to twenty pounds.  Further, Dr. Pardo's notes state that he found no significant functional limitations and that Plaintiff is capable of medium work activity (Tr. 173).  In light of these differences in medical opinions, it was within the ALJ's discretion to not give controlling weight to Dr. Rice's evaluation.

The ALJ's opinion also refers to the Functional Capacity Evaluation when it points out, "the impartial vocational expert was called upon and testified based upon the claimant's residual functional capacity, the claimant could return to her past relevant work as a retail cashier as previously performed" (Tr. 20-21).  At the proceeding, the vocational expert testified that he had read the file and had an opportunity to review Plaintiff's testimony regarding her prior work history.  The ALJ's reliance on the vocational expert's testimony when writing his decision was not erroneous.

Plaintiff's third and final argument that ALJ Olson's credibility determination was erroneous because it failed to comport with the evidence. Plaintiff claims that the ALJ's credibility decision contains significant errors that place the accuracy of his assessment in doubt.

The ALJ is afforded special deference in his credibility determinations because he is in the best position to see and hear the claimant and assess her forthrightness. Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000). Therefore, an ALJ's credibility determination will only be reversed if the claimant can show it was "patently wrong." Id. Pursuant to SSR 96-7p, however, the ALJ must give specific reasons for his credibility finding and cannot merely make a conclusory statement that the claimant's allegations have been considered and they are or are not credible. Walker v. Barnhardt, 245 F.3d 881, 887 (7th Cir. 2001). Thus, the ALJ's credibility determination will be affirmed "as long as the ALJ gives specific reasons that are supported by the record for his finding." Skarbek v. Barnhart, 390 F.3d 500, 505 (7th Cir. 2004).

The ALJ gave several reasons and provided sufficient support for his credibility finding. The ALJ stated:

> The claimant can perform most of her activities of daily living without assistance. She also provides care for her father and her father in law, who live with her and her spouse. She cooks for them, washed their clothes, cleans up after them, washes pots and pans, and takes them to their appointments and to get groceries. Additionally, she baby sits for her grandchild, who was a preschooler when the claimant alleges she became disabled. This is not consistent with her testimony that she has 20 bad days a month where she can't do much besides lie down, and the pain reaches a level eight, on a one to ten scale (Tr. 20).

Plaintiff points to the ALJ's statement that "she reported she uses a cane but it was not prescribed by her doctor" (Tr. 19), and, "Additionally, the claimant used a cane at the hearing, but it was not prescribed by a physician which renders it not medically necessary" (Tr. 20). The ALJ may have been mistaken in stating that Plaintiff brought a cane to the hearing that took place on September 1, 2004, but he did rely on Plaintiff's own testimony that she does in fact use a cane,

10

and that a doctor never prescribed a cane to her. Further, the fact that the ALJ believed that Plaintiff did use a cane during the hearing, when she did not, would serve to bolster her claim, not detract from it. It was then within his discretion to determine the effect of using a cane that was not medically prescribed.

Plaintiff next points to the ALJ's statement, "She also provides care for her father and father-in-law, who live with her and her spouse. She cooks for them, washes their clothes, cleans up after them, washes pots and pans, and takes them to their appointments and to get groceries" (Tr. 20). Plaintiff alleges that these statements are inaccurate. However, Plaintiff admits that she cooked supper each day for her whole family (Tr. 57), that she usually does one or two loads of laundry every couple days (Tr. 57), that she puts away pots and pans if her father has done the dishes, and cleans off the counter (Tr. 57), shops for groceries (Tr. 58), and she does not dispute that she takes her family to appointments. There is no merit to Plaintiff's argument with regard to this statement by the ALJ.

Finally, Plaintiff alleges that the ALJ erred with his statement, "The claimant reported she can cook once a day, she can load and unload the dishwasher, she can iron, sweep, mop, do laundry, and shop every six to eight weeks" (Tr. 19). Specifically, Plaintiff alleges that this statement is factually incorrect because Claimant testified that she must sometimes must sit while loading and unloading the dishwasher, that she cannot vacuum or mop. It is true that Plaintiff did state to the ALJ that she could not vacuum (Tr. 58) and had also previously given a written response to a question that she could not mop (Tr. 144). Plaintiff also alleges that sweeping or mopping was never mentioned in the questioning. The ALJ's apparent factual mistake about whether Plaintiff claimed she could sweep, mop, or vacuum are not critical enough to the ALJ's finding as to undermine the logical bridge between the evidence and the result. This Court

11

**RECOMMENDS** that the ALJ's credibility determination is not patently wrong, is supported by substantial evidence, and is sufficiently detailed that we are able to trace its path of his reasoning. See Schmidt v. Barnhart, 395 F.3d 737 (7th Cir. 2005).

## CONCLUSION

Therefore, it is **RECOMMENDED** that the Plaintiff's petition be **DENIED**, that **JUDGMENT** be entered in favor of the Defendant, and that the Court adopt the foregoing findings of fact and conclusions of law.

**DATED: March 5, 2007**

*s/ Donald G. Wilkerson*
**DONALD G. WILKERSON**
**United States Magistrate Judge**
